The next case today is Adalto Machado Nascimento v. Merrick P. Garland, appeal number 21-1046. Attorney Joyce, please introduce yourself for the record and proceed with your argument. Thank you, Yohan. We represent Mr. Nascimento as the petitioner in this case. As we all know, immigration law is complicated and technical in the best of times. I want to move over to another section of the immigration law and raise our issues. This case involves two main issues that seem to come up in the reviewability of immigration actions. One is the ability of the appeals court to review the decision to begin with. It's a jurisdictional question. The government in this case would argue that you have no authority to even look at the matter. We dispute that. We would also argue, which I'd like to discuss briefly, the Supreme Court case that came out last year, Guerrero v. Barr, changes the goalpost a little bit in this matter, where it holds that matters involving mixed questions of law and fact are reviewable by the circuit. We would argue that the applicability of the cancellation of removal statute involves exactly that. This is something that the court does have jurisdiction to take a look at this. There's a split in the circuits. Circuits have held that the appeals court does have jurisdiction. A couple of the circuits have held that they don't. So it's a question of interest. Turning our attention specifically to cancellation of removal and the way that's spelled out, there's four prongs for cancellation of removal for someone to apply for it. You had to have been here for 10 years before a notice to appear is put forth. You have to have good moral character, and there are certain criminal laws that would disqualify you. The fourth prong, we get into the debate in this particular case. There is no real dispute as to the facts of this case, but it's our position, first of all, that the court does have jurisdiction to review the matter. And secondly, both the immigration judge and the Board of Immigration Appeals misapplied the law to the facts in this particular case. One matter of difficulty that we face in both the decision of the immigration judge and the Board of Immigration Appeals is they spend all of two paragraphs in dismissing his qualifications for the exceptional and extremely unusual hardship in the fourth prong of the requirements for cancellation of removal. This is a serious issue because this is a very serious issue. The immigration judge, the way he presents his case, he talks about the facts, we'll give him that, and he does discuss the various aspects of the case, but at no point does he cite to the cases and how it applies to the particular matter at hand, except over in the appendix. To get to the record itself, I take one of the points you're disputing has to do with what the evidence shows regarding relocation. You're of the view that it shows that the spouse would leave and not stay in the United States, correct? Having argued the case, this was an issue that was very unclear. The spouse has family, etc. Here, she did say that she wanted to be with her husband, she considered relocation, there were serious difficulties in whether she could accomplish that for financial, economic, education. The BIA was of the view that she was going to stay, right? They seem to make that assumption, yes. I think that gets down to a matter of fact, as you understand the applicability of the fourth prong to those facts. I would say the facts are in dispute, and at a minimum, there's a lack of clarity as to what that situation was that would suggest at a minimum a possible remand in this case to clarify that point. But to just pursue Judge Hawkins' question, or to repeat it, is it clearly erroneous? Because they heard the evidence and they made a decision. Right, I would say it's clearly erroneous in the sense that it was an open question and they concluded that she wasn't going. That's their job, to listen to the evidence and figure out what's the most plausible view of the evidence, and the most plausible view of the evidence was that she was going. I would argue that it was an open question. When you're making a determination as to whether or not you can move your family to some third country at the drop of a hat when you've lived here for the last 20 years is not something that's totally clear. If the judgment of the BIA that she was going to stay in the United States is supportable under whatever standards that applies, you say clear error, maybe it's substantial evidence, whatever the right standard is for that determination. If we were of the view it's legally supportable and we can't say that was error just because it concluded that she was going to stay in the U.S. Can you win on your petition? Well, we would argue there are other areas that relocation is not the only... Four minutes remaining. So, okay, so what else, then, putting aside the relocation, and assume in the other arguments that you make, the BIA's decision that she was going to stay in the U.S. is a supportable decision. What's left of your case? What's left is the failure to account for country conditions in Brazil. There was literally no discussion of that. And that would be relevant to him? No, that would be, it has to be relevant to her because she would be the qualifying relative to the relief for her. But she's staying. She's staying. They are intertwined. I mean, one of the issues... That's what I want your help with. Assume for the moment that we were of the view that the BIA's determination on the factual question of whether she was going to stay in the U.S. or go is supportable in finding that she's going to stay. What then, taking that as the premise, what then is left of your case? So, I'm not saying that we're there for you abandoning the position that is supportable. I just want to know, so I can understand what to think about, whether if I accept that part of the BIA's ruling, what's left of your case? What's left of the case is the whole issue of separation of the family, the ability of the family to survive here in the United States, given the circumstances, the very difficult set of circumstances to the two children, one who couldn't relocate. This is why the relocation issue is kind of tricky. She did say in the record in there that, yeah, she wants to go, but one of those children is from a former marriage, so therefore, just for custody issues, it would be very difficult to move. So, it's all intertwined. But, assuming they did stay, and he sent down to Brazil, the financial support for the family falls apart, the separation of the two children from the father, the inability of the spouse to spend any length of time, and another point raised by the BIA that's totally out in the left field is the issue of, well, hey, maybe he can come back sometime, because she was a lawful permanent resident. She could petition for him, but that doesn't take into account. But, the moment we appeal this case, you no longer have the voluntary departure. At a minimum, you could be out for 10 years, or God knows what else, unless you can meet certain waivers. So, there's a lot of different factors in play here, other than simply relocation. Although, I do think one of the critical parts of this case is the ability of the circuit to look at the matter. Historically, the First Circuit goes down to the issue of, yes, we'll look at constitutional issues, we'll look at legal issues, but not issues of fact. Also, there's some confusion in this case. Yes, they have discretion as to whether or not they want to grant the relief, but we would argue it's a legal matter on that fourth prong, and that's the area where you should get it right. With the scant discussion of both the judge and the BIA, there's little left for anyone to make some meaningful judgment as to whether or not they did their job or not. We would argue that the evidence supports overturning the case, at a minimum, remanding it for a greater discussion of the problems associated with the case. That's generally our position. Anything further? No, Your Honor. I don't remember if I asked for one minute to re-discuss, but I'd ask for that. Okay. Okay, thank you. Judge, am I going to save one minute of rebuttal for him? Yes, because he didn't use up all his time. Very good. Thank you, Judge. At this time, would Attorney Joyce please mute his device, and would Attorney DeRosha Afodoo please unmute and introduce yourself on the record to begin? Good afternoon, Your Honors. Good afternoon. May I please support Remy DeRosha Afodoo for the respondent, United States Attorney General. This petition for review should be dismissed for lack of jurisdiction. Based on this court's long-standing precedent, the court lacked jurisdiction to review the agency's denial of cancellation of removal because petitioner failed to show exceptional and extremely unusual hardship to his qualifying relatives. The Supreme Court's decision in Guerrero-La Esprita does not provide an avenue through which this court can assert jurisdiction over this matter. In Guerrero, the Supreme Court held that Section 1252A2D includes the application of legal will still forbid appeals of factual determinations. Very recently, in Takuri Takuri, this court reiterated its long-standing rule that the agency's hardship finding is a factual determination that the court cannot review. Precedents spanning decades have held that exceptional and extremely unusual hardship determination is a discretionary determination. Aren't there two pieces to that? The first being whether it rises to the legal standard of qualifying and the second being if it does, does it merit the exercise of discretion? In terms of hardship, Your Honor, hardship is a discretionary determination. It is a factual decision that cannot be reviewed by this court. That's the long-standing rule. Guerrero-La Esprita did not change much in terms of that landscape, Your Honor, because it did state that it does not apply when facts are disputed or not established and that the provision will forbid appeals of factual determinations. Counselor, Prong 4, which says that the removal would create exceptional and extremely unusual hardship to the alien spouse, parent, or child who is a citizen. That, I assume, is a legal standard from your perspective? No, Your Honor, it is a discretionary standard based on the long-standing... So, the petitioner is arguing that it can't be discretionary if one, two, and three are legal. That Congress wouldn't just suddenly have three legals and one discretionary. The long-standing rule, Your Honor, has been that that particular standard is a discretionary standard. Why does it make sense to continue to adhere to that long-standing rule in light of the racist decision by the Supreme Court and the normal way of reading a statute? It makes sense, Your Honor, if you look at the two courts of appeals have ruled in favor of that standard, Your Honor, and the argument is that that kind of decision, the hardship standard, is one that is a subjective standard that requires an adjudicator's expertise in weighing intangible factors and equities. It is not an objective, straightforward standard. But what about it makes it non-arbitrary? There has to be something about how we define it that makes it non-arbitrary. Well, Your Honor, hardship is discretionary because Congress delegated the authority to construe the meaning of that phrase to the Attorney General, and that standard is unreviewable. It has not been reviewable for over two decades. It has none of the language that typically makes something committed to agency discretion by law. It doesn't say with respect to that factor as deemed by the Attorney General or anything like that, any more than any other provision in the immigration statutes. Well, because, Your Honor, that is a judgment call, and section 1252A-D specifically states that discretionary determinations cannot be reviewed by a court of law. It's very, very clear on the record, Your Honor, that... Let me ask you, if the hardship standard is met, does the agency still have discretion not to grant the relief? Yes, Your Honor. Okay, so that second one would clearly be a discretionary determination of just the kind the statute mentioned. The question is, why does the prior question of whether it meets the standard set forth in the statute itself of being a hardship is not at least a mixed question of fact and law? Because section 1252A-D specifically deals with discretionary determinations, and it states specifically that determinations under that... But the prior factors in that same section are not discretionary. You concede that. Pardon me, Your Honor? The prior prongs of that same discretionary determination are not themselves discretionary. They're reviewable. You agree? Yes, Your Honor, they are. So the question is, what about the fourth one? Because the conclusion that it's discretionary apart from the fact that we've said in the past prior to the Supreme Court's recent decision that it was. Because, Your Honor, Congress delegated the authority to construe the meaning of that phrase to the Attorney General. That's true of the other three factors. Pardon me, Your Honor? That's true of the other three factors. That's true of the Attorney General deciding whether they've resided here for 10 years, right? The other factors actually are enumerated in the INA about how to determine petitioners' stay in the United States. And the ambiguity about them is for the AG to resolve, just like with respect to the hardship factor. Well, in terms of the ultimate discretionary factor, yes. But in terms of the length of residence in the United States to 10 years, there's actually guidance in the INA, such as the stop time rule, which states that when an NTA is served on a petitioner, is when the countdown begins. So there are so many other legal hurdles, legal issues that have to be reviewed in all the other three factors, as opposed to this particular factor, which has been ceded to the Attorney General. If we thought you were wrong on this, and we got to the merits of the question, we thought it was reviewable. Could you just address what we are to make of the reference by the BIA to the possibility of the petitioner being able to return, notwithstanding the legal barriers to him being able to do so that it didn't mention? Yes, Your Honor. As we address that issue in our brief, Your Honor, the fact that the petitioner's ability to probably adjust status, that he may, using the word may, be able to adjust status, was not the, well, the board, the agency was not saying per se that because he might have that ability, that he would, that that nullifies his application. The agency basically just stated that that was another factor that could be considered, and the petitioner is still eligible for that, even after a final order of review has been made, as we noted in the footnote in our brief, on page 29, footnote 5, and so that option is still... So there is a Ninth Circuit case which says that sort of throwing out these alternative paths to re-entry or remaining here undermines a fair consideration of the hardship claim. Yes, Your Honor, are you talking about Artiega, the Alvarez v. Holder, which we also addressed in our brief, where the court in that case, as we stated, did not say that, did not issue a per se ruling that the board may never rely on the availability of alternative means of lawful immigration in deciding a hardship claim. In fact, the court specifically stated that on remand the board may rely on that alternative means to immigrate factor to the extent that it's justified by the particular facts of the case. Yeah, but that's the problem here. We're not sure that it accounted for, that's the concern that I thought the Ninth Circuit also had, were they accounting for the limited nature of that return when it threw it out without saying any more? No, in that case, Your Honor, the court was concerned about what it perceived the board's ruling to be that regardless of the merits of the applicant's claim, it is undercut as a matter of totally distinguishable. The judge just said it may result in him being able to adjust his status. It was one of the factors that the agency considered. The agency did not say, like the Ninth Circuit decision, that just because he has that option, it totally undercuts his case. But moving on to Guerrero-Las Priller, Your Honor, that case does state that Section 1252A2D will still forbid appeals on factual determinations. And as you heard counsel say, the facts in this case are disputed. He said that it was unclear. That's time. Let me finish your sentence, yes. Yeah, he said that the facts are unclear, but Guerrero-Las Priller forbids appeals of factual determinations. And if the court ultimately decides that it has jurisdiction to review the agency's hardship claim, the government again maintains that the agency applied the correct legal standard in deciding that petitioner did not meet the exceptional and extremely unusual standard. The government did not argue the merits of this case, but the court, if ultimately decides can't do it, like the Fifth Circuit did in Trejo, the court can certainly, even without the counterargument of the government, address the merits because it's not dispositive of this case. And so we ask that the court dismiss the petition for lack of jurisdiction. Any other questions? Judge Hawkins? Yeah, I have a question. Maybe it's a suggestion. This occurs to me as a case that should be mediated. Would the government be willing to mediate this case? Yes, Your Honor, we would be willing to mediate the case. The petitioner has never sought mediation or asked for prosecutorial discretion. And that is something that, you know, as much as we can mediate the case, the government's position is that the agency's correct in all respects, and that the court lacks jurisdiction to review this factual determination because there are no legal or constitutional claims in this case that merits review. Well, you know this, I've been around, I think I'm working on my fifth president. And this goes back and forth in my circuit, and I'm always lulled to suggest that the Ninth Circuit should be followed in any respect. But in my circuit, under at least two of the last five administrations, this case would go to mediation. Government would hold back the power of removal. And once the spousal petition were finally approved, the case would go away. Unfortunately, Your Honor, when this case came to our office, there was no avenue for that under the previous administration. Now that the new administration is on raft, there may be an avenue. The question is simple and not argumentative. If the panel directs the parties to engage in mediation, would the government participate? So Judge Hawkins, let me, this came up last month. We had two immigration cases, both of which we referred to our camp program. And if we direct this to the camp program, it's not really discretionary for the government. They can't refuse. They have the privilege of not settling, but they can't refuse to participate in the mediation. But it's nice to hear counsel be willing to engage in that. And thank you for that. Oh, yes, we would, Your Honor. Thank you very much, Your Honor. And thank you, Counselor. All right. If there are no further questions, I think Mr. Joyce has one more minute that he grabbed hold of. Yes, Judge. If Mr. Joyce could unmute his audio and video at this time and then reintroduce himself on the record for his one minute of rebuttal. Thank you, Your Honors. Mr. Joyce for Mr. Nassimino. Certainly, you know, Judge Hawkins' suggestion would be in the real world a very plausible way to deal with this case. However, that may or may not ever happen and administrations come and go when the law keeps shifting. So with all that being said, I think you've got a good three years in mediation to well under the current administration. It could easily take three years. But getting that, just back to my quick point, I think statutorily, this court does have jurisdiction to look at this kind of case, as pointed out by Judge Barron and yourself, Your Honor, that fourth prong is no different than the first three in the sense that there is, at a minimum, a question of mixed law and fact as to how that standard is met. The BIA, in its own decision, sort of suggests they're applying their precedent cases to the facts and coming to grips with that fourth prong. I think there is an important statutory point that we would ask the panel to consider as to whether or not you can take a look at these cases in the light of the Supreme Court decision that came down last year as an issue of mixed law and fact. And that must be my one minute, and thank you very much for allowing me to appear. Thank you. That concludes argument in this case. Attorney Joyce and Attorney Derocha Afadu, you should disconnect from the hearing at this time.